The contact between the wire of the defendant and the wire of the pole ascended was at some distance from the pole,—about a short block away, says one witness. Whether, in the course of his attempt to reach the fire department box at the top of the pole, the intestate accidently touched a wire ordinarily safe, but suddenly made fatal by this contact a block away, or whether he intentionally clutched the wire to aid his climb, is impossible to determine. Whether his contact was by accident or by design, I think that the question of contributory negligence in this case was still for the jury. The wires on the poles were ordinarily harmless. The intestate's business required him to ascend to the top of the pole. From the nature of the trouble communicated to him, he had no reason to suppose that any of these wires had suddenly become lethal. There were no indications which made such a condition obvious to a man in the exercise of ordinary care and prudence, and under the circumstances it did not appear that he omitted any usual or ordinary precaution before attempting to perform his task, which either involved contact with the wires or made the handling of them natural under the circumstances.

The judgment and order should be affirmed, with costs. All concur.

(64 App. Div. 418.)

## FAWDREY v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. October 11, 1901.)

1. CARRIER—INJURY TO PASSENGER—DEFENDANT'S NEGLIGENCE—ADMISSION OF COUNSEL—EFFECT.

Where, in an action against a carrier for injuries to a passenger, defendant's counsel admits its negligence, and to the court's inquiry as to whether he conceded that such negligence was "the sole cause of plaintiff's injuries," and that the only issue was the amount of damages, answers, "If any, sir," the defendant is not precluded from contending that no part whatever of plaintiff's condition was the result of the accident.

2. SAME—EXCESSIVE VERDICT—EVIDENCE.

In an action against a carrier for injuries to a passenger, a pregnant woman, it appeared that plaintiff's premature confinement directly resulted from the accident, and that at the time of the trial she was paralyzed on her right side, and was unable to control the sphincter muscle. There was a conflict in the expert evidence, both as to the cause and permanency of the injuries. *Held*, that a verdict for $28,500 was properly set aside as excessive.

3. SAME—SETTING ASIDE VERDICT—DISCRETION OF COURT.

A trial court has the same discretion to set aside a verdict for personal injuries as excessive, where defendant's negligence is conceded, and the only issue submitted to the jury is the extent of the injuries, as where the verdict is based on a determination of the issue of negligence.

Appeal from trial term, Kings county.

Action for injuries by Anna D. Fawdrey against the Brooklyn Heights Railroad Company. From an order setting aside a verdict in plaintiff's favor as excessive, she appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

S. C. Baldwin (Henry Wilson Bridges, on the brief), for appellant.
John L. Wells, for respondent.

GOODRICH, P. J.   The plaintiff was injured in a collision be-
tween two cars of the defendant, and at the trial the latter did not
contest its liability to pay for whatever damages were actually oc-
casioned to the plaintiff by the accident.   It did then, and does now,
deny that the plaintiff's condition, as it was at the time of the trial,
resulted from the accident, contending that it was partially, at least,
the result of confinement.   The jury rendered a verdict for $28,500.
The defendant moved to set it aside as excessive, and against the
weight of evidence.   The motion was granted, and an opinion ren-
dered by Mr. Justice Mattice, which is hereto appended.[1]

We are called upon to decide whether the order was a fair exer-
cise of discretion, and, having had occasion lately to consider the
question in Lyons v. Connor, 53 App. Div. 475, 65 N. Y. Supp. 1085,
Mr. Justice Jenks writing, find it unnecessary to review authorities
further than to cite our approval in that case of the remark of Mr.
Justice Freedman in Bannon v. McGrane, 45 N. Y. Super. Ct. 517:

"It is at all times a grave question for an appellate court to reverse, on
the ground of error, an order made by the trial judge setting aside the verdict
as against the weight of evidence."

The plaintiff's counsel, however, contends that this principle does
not apply to the case at bar, because, as stated in his brief:  "There
is no question of weight of evidence.   Both the order and the opinion
mention explicitly that the verdict is set aside soley on the ground
of excessive damages, and this must necessarily be so, as weight of
evidence cannot be involved in this case under the stipulation."  The

---

[1] MATTICE, J.   I am forced to the conclusion that the verdict should be
set aside as excessive.   The amount awarded is extravagant in the extreme,
and not within the bounds of reason and justice.   The amount of this ver-
dict and the income to be derived therefrom will be so great that the wife
can relieve the husband from the burden of supporting the family while she
lives, and enable her at death to transmit a fortune to her children.   I would
reduce the verdict to a reasonable amount, and give the plaintiff an oppor-
tunity to consent to such reduction; but I am satisfied that the ends of jus-
tice require a new trial.   To my mind, it is highly improbable that the plain-
tiff was injured by reason of the collision.   The impact of the cars was very
slight.   The cars were not injured, and none of the occupants of the car,
except the plaintiff, claim to have been injured in the slightest degree, or
scarcely inconvenienced.   The only disinterested witness upon the car testi-
fied that the impact was very slight, and barely disturbed her position on the
seat in front of the plaintiff.   The plaintiff claims to have been sitting well
to the front of the seat, and was thrown backward against the back of the
seat.   There were no visible marks of violence on her back, and the physi-
cian who attended her shortly afterwards, during the birth of her child, dis-
covered nothing about her condition or appearance to indicate any injury to
the spine.   The rendition of such a large verdict in all the circumstances of
this case induces me to believe that the jury were influenced largely by sym-
pathy, and did not fairly weigh and consider all the evidence.   In view of
this large verdict, the judgment of the jury upon the important question
whether the accident was the natural and proximate cause of the injury is
of little value.   Verdict set aside, and new trial granted, upon the ground that
the verdict is for excessive damages.

stipulation referrred to was made at the opening of the trial, in the following language:

"Mr. Yonge: Before we proceed further with the case, so that the issues may be narrowed and limited to just what there is in the case, the defendant desires to concede certain facts. The defendant concedes that the plaintiff was, on the 1st day of August, 1899, at about five to five-thirty in the afternoon, a passenger on one of the cars operated by the Brooklyn Heights Railroad Company along the line known as the 'Culver Road,' and that the car in question came to a stop near the Parkville station, at a point about one hundred feet from the Manhattan crossing, where the tracks of the Long Island Railroad Company cross the tracks of the defendant, in order to await the passage of one of the trains of said Long Island Railroad Company which was there, and was about to cross the tracks of said defendant at said crossing; and that while the car in which the plaintiff was a passenger was standing and waiting the passing of the train on the tracks of the said Long Island Railroad, that said car was run into by another car operated by the defendant upon the same track, and going in the same direction. Mr. Baldwin: Do you admit that the collision was caused through the negligence of one of the servants of your road? Mr. Yonge: I do not admit anything beyond what I have. Mr. Baldwin: Then we will prove the whole case. Mr. Yonge: Put it in this way: I do not want to put on you any unnecessary burden, or to consume the time of the court unnecessarily. I take it, that from the admissions I have made, that the inference of negligence necessarily follows. The Court: You do not contest the question of negligence? Mr. Yonge: No. The Court: Nor the contributory negligence? Mr. Yonge: No, we do not. We concede this: That the motorman of the car that ran into the car in which the plaintiff was was negligent in so doing. The Court: That it was the sole cause of the injuries, and the only question here is the extent of the injury and the amount of damages? Mr. Yonge: If any, sir."

There was, consequently, but one question for the jury, viz. the extent of the plaintiff's injury resulting from the collision; but manifestly, when the defendant conceded that the collision was the "sole cause of the injury, it was not precluded from proving that the plaintiff's condition did not result from the accident. The stipulation was evidently given for the purpose of saving time, and we cannot give any such limited or technical construction to the word "injury" as would preclude the defendant from showing that the plaintiff's condition was not the result of the collision. Indeed, the plaintiff's counsel frankly conceded in the argument, in answer to a question from the bench, that the defendant would have been permitted to give evidence to show, if it could, that the plaintiff was malingering; and that admission seems to concede the correctness of the defendant's contention that the word "injury" refers to the injury actually received from the accident. The result of the stipulation as to negligence was to leave for trial only the question as to the amount of damages. The plaintiff, who at the time of the accident was within a month of her confinement, testified as follows:

"At the time of the collision I was sitting rather forward in the seat, towards the front edge of the seat, with my hands in my lap. When the shock of the collision came, it threw me back against the seat I was sitting on, and then again forward against the seat in front of me. When it threw me, I struck the back of the seat. The part of my back which sustained the blow was between the shoulders and lower part of my back,—below the shoulder blade. When I was thrown forward, I struck directly across my abdomen. I struck my stomach right against the seat in front of me. I

did not fall down on the floor. It settled me back after I struck against the seat in front. Then I settled back onto the seat."

The evidence of the plaintiff's witnesses leaves no doubt that premature confinement occurred the day after the accident, and resulted from it. Nor is there any question that the plaintiff, at the time of the trial, was suffering from paralysis of the right side, and from incontinence of urine and fæces. The extent of this condition was questioned, and its consequence upon the accident was denied by the defendant. Several physicians and professional nurses were examined as to the plaintiff's condition; and while the evidence, especially that of the experts, was not in any sense a demonstration that the plaintiff's present condition is permanent, or that it is the necessary and natural result of the blows and shock which she received, it was sufficient, within the rule, to require the submission of the question to the jury; but it by no means follows that the court was compelled to deny a motion to set aside the verdict as against the weight of evidence or for excess in its amount. Something of the reason therefor is involved in the recent decisions of the court of appeals in Fealey v. Bull, 163 N. Y. 397, 57 N. E. 631, and McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282. On the day of the trial the plaintiff was examined by Dr. Pray, a female physician, selected by the court. Her testimony does not fully corroborate that of the physicians called by the plaintiff, so far as the extent of the injuries is concerned, and the trial justice was unquestionably influenced by her report in his conclusion to set aside the verdict. I am unable to discover any difference in the application of the rule as to the regard which is to be given to the discretion of the trial justice in setting aside a verdict between evidence upon an issue of negligence and an issue as to the amount of damages. In either case the appearance of witnesses and their manner of giving evidence are calculated to and do impress both court and jury. It would be a strange distinction to say that court and jury might regard those matters in deciding the one question, and not the other. I know of no such rule, and have been unable to find any case in which the distinction is recognized. Certainly, it is illogical and dangerous.

Under these circumstances, and after a careful examination of the evidence, I have no hesitation in saying that the order of the trial justice should be affirmed, with a modification requiring the defendant to pay the costs of the trial and all disbursements in the action to date, together with the costs of this appeal.

SEWELL, J., concurs. WOODWARD, HIRSCHBERG, and JENKS, JJ., concur in result.